# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| DANNY WASSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-CV-01722 JAR |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Danny Wasson's ("Wasson") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.

## I.    Background

Wasson filed an application for disability insurance benefits on February 16, 2012, with an amended onset date of disability of August 13, 2011.[2] After his application was denied at the initial administrative level, he requested a hearing before an administrative law judge ("ALJ"). Following hearings on January 31, 2014 and August 22, 2014, the ALJ issued a written decision on September 25, 2014, finding that Wasson had the residual functional capacity ("RFC") to perform certain jobs that exist in significant numbers in the national economy, and was thus not

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Wasson initially alleged disability beginning April 20, 2008. He amended his alleged onset date in light of a decision denying a previous claim, which adjudicated the period ending August 12, 2011. (Tr. 9, 253)

disabled under the Act. Wasson's request for review by the Appeals Council was denied on September 19, 2015. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II.     Facts

The Court adopts Wasson's Statement of Facts (Doc. No. 16-1) and the additional facts set forth in Defendant's Response to Plaintiff's Statement of Uncontroverted Material Facts (Doc. No. 21-1). The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III.    Standards

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2009). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted). The court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). The severity of mental disorders is determined by rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. § 404.1520a(c)(3). "The sequential evaluation process may be terminated at step two only when

the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number

of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

## IV. Decision of the ALJ

The ALJ found that Wasson had the severe impairments of coronary artery disease (status post myocardial infarction and multiple stent placements), chronic obstructive pulmonary disease (COPD), anxiety disorder, major depression, mood disorder, and obesity, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In assessing Wasson's mental impairments at these steps, the ALJ considered the "paragraph B" criteria discussed above and concluded that Wasson was only mildly restricted in activities of daily living and social functioning. The ALJ also found Wasson had moderate difficulties with regard to concentration, persistence and pace. Wasson had experienced no episodes of decompensation.

After considering the entire record, the ALJ determined that Wasson had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with certain limitations, such as standing and walking for four hours of an eight-hour workday; sitting for about six hours of an eight-hour workday; lifting 20 pounds occasionally and ten pounds frequently; and performing simple, repetitive tasks throughout the workday. The ALJ relied on the testimony of a vocational expert that an individual with Wasson's RFC and vocational factors could perform certain jobs that existed in significant numbers in the national economy, such as bench assembler, electrical assembler, and retail price marker. Thus, the ALJ found Wasson was not disabled as defined by the Act.

## V.    Discussion

In his appeal of the Commissioner's decision, Wasson challenges the ALJ's RFC and credibility determinations. Specifically, he argues the ALJ erred (1) by not including social functioning limitations in either the hypothetical question posed to the vocational expert or the RFC assessment; and (2) by not providing a credibility analysis supported by substantial evidence. A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529; SSR 96–7p. It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

### Credibility

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Wasson's credibility was essential to his determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible."); Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC."); Pearsall v.

_Massanari_, 274 F.3d 1211, 1217 (8th Cir. 2002) (same). Here, the ALJ found Wasson's statements concerning the intensity, persistence and limiting effects of his symptoms not entirely credible in that they are not supported by the medical evidence (Tr. 16-17).

In evaluating a claimant's credibility, the ALJ is required to apply the factors from _Polaski_, 739 F.2d at 1322, which include the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. _Choate v. Barnhart_, 457 F.3d 865, 871 (8th Cir. 2006) (citing _Wheeler v. Apfel_, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ may not, however, discount a claimant's allegations of disabling pain simply because the objective medical evidence does not fully support those claims. _O'Donnell v. Barnhart_, 318 F.3d 811, 816 (8th Cir. 2003). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. _Ellis v. Barnhart_, 392 F.3d 988, 996 (8th Cir. 2005).

Here, the ALJ identified several reasons for discounting Wasson's credibility. First, Wasson's daily activities were inconsistent with the alleged severity of his symptoms and limitations. Wasson attends to all of his personal care needs, lives with his family, including young grandchildren, walks for exercise, pulls weeds in the yard, and helps with household chores. He also reported playing board games occasionally, helping the children with their homework, and using public transportation (Tr. 16, 271-84, 314-28). To be sure, the ability to engage in these kinds of activities alone is insufficient reason to discredit Wasson's subjective complaints. _See_ _Baumgarten v. Chater_, 75 F.3d 366, 369 (8th Cir. 1996). But the extent of his

activities, particularly when considered in conjunction with the medical record in this case, further supports the ALJ's decision. Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (collecting cases).

Although Wasson had a "very good" work history, which generally tends to weigh in favor of his credibility, the ALJ concluded that his good work history did not overcome the objective medical evidence, which supports a finding that he is still capable of doing light exertional work as set out in the RFC (Tr. 16). Chest x-rays in May 2012, showed likely pneumonitis, but other findings were stable when compared to x-rays from August 2010 (Tr. 597, 640). Wasson's primary care physician noted severe COPD in February 2013; however, on physical examination, his lungs were found to be "normal" (Tr. 608). Pulmonary function testing in November 2012 showed only minimal obstructive lung defect, with an insignificant response to the bronchodilator (Tr. 660-63). In July 2013, Wasson reported to his primary care physician that he had no acute complaints (Tr. 722). Chest x-rays for a nonproductive cough and shortness of breath were taken and revealed no active disease (Tr. 727). A treadmill stress test performed in June 2014 showed Wasson had no scintigraphic evidence of significant myocardial ischemia, an ejection fraction of 60%[3] and all walls appeared to thicken normally (Tr. 17, 776-77).

Also in June 2014, Wasson was examined by Stephen Williamson, M.D., a consultative medical examiner specializing in occupational medicine (Tr. 17, 20, 745-57). After reviewing Wasson's medical records, Dr. Williamson noted that coronary artery disease was well documented but that Wasson had no signs of congestive heart failure at the time of examination. COPD was likewise supported by the medical evidence, but Wasson "had no dyspnea or prolonged expiratory phase identified." Depression and anxiety was not supported by Wasson's

---

[3] An ejection fraction of 60 percent means that 60 percent of the total amount of blood in the left ventricle is pushed out with each heartbeat. An ejection fraction of 55 percent or higher is considered normal. www.mayoclinic.org/ejection-fraction/expert-answers/FAQ (last visited April 27, 2017).

"normal mood and affect." Type 2 diabetes was not supported by normal foot pulses and normal sensation. High blood pressure was not supported by the blood pressure finding of 119/65 (Tr. 751). Dr. Williamson opined that Wasson could lift and carry up to 20 pounds frequently, sit for six hours in an eight-hour workday, and stand and walk for four hours in an eight-hour workday (Tr. 754-55). He also found environmental limitations regarding unprotected heights (Tr. 756). The ALJ gave Dr. Williamson's opinion great weight because it was consistent with the examination report and the other medical evidence of record (Tr. 20).

There is no dispute that Wasson has a long history of heart disease and respiratory problems (Tr. 17-18); however, the ALJ noted that he also has a history of medication noncompliance (Tr. 17, 68, 492, 494, 504, 568, 575, 580, 582, 651, 692, 751) and has continued to smoke despite having been consistently counseled to stop smoking due to his heart and lung conditions (Tr. 580, 664-693, 722, 761). The ALJ commended Wasson for cutting back on his smoking, but found the fact that he continues to smoke (10 cigarettes per day) despite his respiratory and cardiac complaints weakened his credibility with regard to the severity of his breathing problems (Tr. 17). An ALJ may properly consider a claimant's noncompliance in making his credibility determination. Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008); see also Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001) (ALJ may consider noncompliance with medical treatment in discrediting subjective complaints); Wheeler, 224 F.3d at 895 (ALJ properly considered claimant's failure to follow doctor's advice to stop smoking in discrediting her subjective complaints).

The ALJ also noted that Wasson referred to his inability to perform his past work, which was medium to heavy physical labor, but had made no attempt to work in a less strenuous field (Tr. 16). This is an adequate basis from which to discount Wasson's subjective complaints. See

Kennedy v. Astrue, No. 4:07CV1737, 2009 WL 277791, at *9 (E.D. Mo. Feb. 5, 2009) (ALJ found the fact claimant had not attempted to work in a less strenuous field since his injuries indicated a "lack of motivation to work rather than a lack of ability to work.").

In summary, the Court finds the ALJ considered Wasson's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from his credibility. Because the ALJ's determination is supported by good reasons and substantial evidence, the Court defers to his determination. Cobb v. Colvin, No. 2:13CV0115 TCM, 2014 WL 6845850, at *14 (E.D. Mo. Dec. 3, 2014) (internal citations omitted). See also Polaski, 739 F.2d at 1322.

**RFC**

Wasson argues the ALJ should have included limitations in social functioning in the RFC and the hypothetical question posed to the vocational expert based on his finding that Wasson has mild difficulties in social interaction; an opinion from an examining source suggesting Wasson have limited contact with the public; and an opinion from a non-examining source suggesting Wasson have a limitation dealing with supervisors. The Court finds there was substantial evidence to support the ALJ's RFC determination and that the hypothetical question encompassed all relevant impairments.

With regard to social functioning, the ALJ found that:

[Wasson] has mild difficulties. The record does not reflect a significant history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation during the alleged period of disability. [Wasson] lives with his son and family, including grandchildren, whom he helps watch. He also reported talking with his mother on the telephone and going to the store with his son. The evidence in the record, including [Wasson's testimony at the hearing], shows that [he] is, for the most part, capable of interacting independently, appropriately, effectively, and on a sustained basis.

(Tr. 14) As an initial matter, general findings at steps two and three of the disability evaluation are not to be used as RFC findings. "The adjudicator must remember that the limitations

identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, *4 (S.S.A. July 2, 1996). Thus the fact that the ALJ found Wasson had mild difficulties does not dictate any specific findings in the RFC.

Wasson points to treatment notes and consultative reports showing he complained of difficulty getting along with others and frequently reported being angry and irritable (Tr. 69, 279-80, 323-24, 603-04, 677-78, 684-85, 692). However, in July 2013, he reported feeling better and less depressed (Tr. 667) and stated that he felt he had reached all of his goals (Tr. 670). By October 2013, Wasson had asked to be discharged from Pathways Behavioral Health, reporting that he felt "great" (Tr. 665). In June 2014, Wasson reported that depression and anxiety affects his ability to work secondary to wanting to be left alone (Tr. 746), but as the Commissioner notes, there is no indication in the record that Wasson sought further treatment (Doc. No. 21 at 11). Moreover, he has not required psychotherapy, inpatient treatment or psychiatric hospitalization since his alleged onset date.

In summary, the ALJ considered Wasson's social functioning generally at steps two and three of the disability evaluation, and more specifically when assessing the consistency of the evidence at step four. The record does not support a finding that his mental impairments prevent him from performing work described in the RFC. As the ALJ concluded, any ongoing limitations due to mental impairments have been accounted for by reducing Wasson to unskilled work (Tr. 19).

Wasson also points to the opinions of the consultative examiner, Robert D. Forsyth, Ph.D., and the non-examining source, James W. Morgan, Ph.D. In August 2012, Wasson was examined by consultative psychologist, Dr. Forsyth, who noted Wasson to be "generally friendly

and cooperative during the assessment process appearing somewhat anxious but not in any acute distress" (Tr. 604). He further found Wasson's social judgment skills were "mildly impaired," and opined that while his social interaction and adaptation in a work setting would be adequate, Wasson "would do best … where he had limited contact with the general public" (id.).

In September 2012, after reviewing Wasson's medical records, Dr. Morgan opined that Wasson would not be significantly limited in his ability to interact with the general public or to get along with coworkers or peers, and would be moderately limited in his ability to ask simple questions or request assistance, and to accept instructions and respond appropriately to criticism from supervisors (Tr. 73). Dr. Morgan further opined that Wasson "may perform best away from others" (Tr. 70).

The ALJ gave Dr. Forsyth's opinion partial weight because the record does not reflect significant difficulty with social contact, and because Dr. Forsyth found Wasson related well during the interview (Tr. 19, 604). The ALJ treated Dr. Morgan's opinion as a statement from a non-examining expert source and gave it less weight than the opinions of the examining physicians, because Dr. Morgan did not have the benefit of reviewing all of the evidence made part of the record following the initial stage of adjudication. In particular, Dr. Morgan did not have access to the mental health treatment records indicating that Wasson was consistently pleasant and had little social difficulty other than his reported irritability (Tr. 20). Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir. 2010). In light of the record evidence in this case, the reasons articulated by the ALJ are valid reasons for discounting these opinions.

## VI. Conclusion

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.


Dated this 28th day of April, 2017.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**